AO 109 (Rev. 11/13) Warrant to Seize Property Subject to Forfeiture

# United States District Court
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Seizure of: <br> *(Briefly describe the property to be seized)* <br><br> Up to and Including $75,800 on Deposit at JP Morgan Chase Bank in account number 500883159, held in the name of Dutse Investment Group. | ) Case No. <br> ) <br> ) <br> ) 21-341MB <br> ) <br> ) <br> ) <br> ) <br> ) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the District of Arizona be seized as being subject to forfeiture to the United States of America. The property is described as follows:

The contents of JP Morgan Chase Bank account number 500883159 held in the name of Dutse Investment Group.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _December 9, 2021_
(not to exceed 14 days)

☐ in daytime - 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to any United States Judge on criminal duty in Arizona.

N/A   ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be search or seized *(check the appropriate box)*

☐ for ___ days *(not to exceed 30)*.   ☐ until the facts justifying, the later specific date of _____

Date and time issued: 11/24/2021 @ 11 AM     _____
                                              *Judge's signature*

City and State: Phoenix, AZ                   Honorable Michelle H. Burns, U.S. Magistrate Judge
                                              *Printed name and title*

AO 108 (Rev. 06/09) Application for a Warrant to Seize Personal Property Subject to Forfeiture

# United States District Court
## for the
## District of Arizona

In the Matter of the Seizure of: )
*(Briefly describe the property to be seized)* )
)
) Case No.
) 21-341 MB
Up to and Including $75,800 on Deposit at JP Morgan )
Chase Bank in account number 500883159, held in the )
name of Dutse Investment Group. )
)
)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe the following property in the District of Arizona is (a) property, real or personal, which constitutes or is derived from proceeds traceable to a specific unlawful activity including but not limited to 18 U.S.C. § 1343 (Wire Fraud); and property, real or personal, involved in a transaction or attempted transaction in violation 18 U.S.C. § 1956 and/or 1957 (Money Laundering); (b) subject to seizure pursuant to 18 U.S.C. §§ 981(b) and 982(b)(1), and 21 U.S.C. § 853(e) and (f); and (c) subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), and 982(a)(1) and 28 U.S.C. § 2461. *(describe the property):*

Up to and Including $75,800 on Deposit at JP Morgan Chase Bank in account number 500883159, held in the name of Dutse Investment Group.

The application is based on these facts:

See the Affidavit of Federal Bureau of Investigation (FBI) Special Agent Bradley E. Thurman

❏ Continued on the attached sheet.

*Applicant's signature*

Approved by AUSA Mark J. Wenker

Bradley E. Thurman, Special Agent, Affiant
*Printed name and title*

Sworn to before me and signed telephonically.
Date: November 24, 2021

*Judge's signature*

City and State: Phoenix, Arizona

Honorable Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

Special Agent (SA) Bradley E. Thurman (Affiant), Federal Bureau of Investigation (FBI), having been duly sworn, deposes and states the following:

### I. INTRODUCTION

1. I have been employed as a Special Agent with the Federal Bureau of Investigation (FBI) since March 2015. Prior to that, I was a Staff Operations Specialist, an analytical position with the FBI, for over five years. I have participated in counterterrorism, criminal, and cybercrime investigations as a Staff Operations Specialist and Special Agent with the FBI. As such, I have participated in all aspects of the execution of search and seizure warrants. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, investigators, or witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

### II. PURPOSE OF THIS AFFIDAVIT

2. This affidavit is submitted in support of an application for a seizure warrant to seize the following:

> **Up to and including $75,800 on deposit at JP Morgan Chase Bank in account number 500883159, held in the name of Dutse Investment Group**

(the "JPMC Bank Account.")

3. I submit there is probable cause to believe that the JPMC Bank Account (a) contains property, real or personal, which constitutes or is derived from proceeds traceable to a specific unlawful activity, including 18 U.S.C. § 1343 (Wire Fraud), and is property, real or

personal, involved in a transaction or attempted transaction in violation 18 U.S.C. § 1956 and/or 1957 (Money Laundering); (b) is subject to seizure pursuant to 18 U.S.C. §§ 981(b) and 982(b)(1), and 21 U.S.C. § 853(e) and (f); and (c) is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 982(a)(1), and 28 U.S.C. § 2461.

### III. BACKGROUND AND INVESTIGATION

#### Description of Business E-mail Compromise Fraud (BEC)

4.  Based on my training and experience, I am familiar with a common type of fraud scheme known as a Business E-mail Compromise ("BEC") scheme, among other names. As part of this fraudulent scheme, criminals gain unauthorized access to E-mail accounts belonging to others or simply impersonate others by creating fictitious E-mail accounts meant to resemble those actually used by the intended victims. The criminal then uses the compromised or fictitious E-mail accounts to cause funds belonging to the victim to be transferred to beneficiary accounts under the criminals' control. The beneficiary accounts are routinely held by individuals known as "money mules." Money mules are cultivated online or hired by the criminals to assist the scheme with transferring funds through bank accounts and through other means. Money mules may or may not be aware of the criminal nature of the funds, and in some cases are, in fact, victims of fraud themselves. After the funds are deposited into the money mule's account, they receive instructions from the perpetrators of the fraud regarding the disbursement of the proceeds credited to their accounts. The perpetrators of BEC schemes are typically able to cause funds to be transferred without the victim's knowledge and before the victim or the financial institutions involved detect the fraud.

## Investigation of the BEC Fraud Incident

5. Based on my participation in this investigation, I am familiar with one such BEC scheme in which an unidentified account holder (the "Victim") at Alaska USA Federal Credit Union ("Alaska FCU") experienced an account takeover which allowed a perpetrator of fraud to send a payment of $190,000 via Automated Clearing House (ACH) to an account at The Vanguard Group, Inc. ("Vanguard") on or about April 23, 2020. Affiant contacted fraud investigation personnel at Alaska FCU, who provided documentation verifying the account takeover and details of the resulting fraudulent payment. Vanguard account 39272243 (Account A), which received the victim's funds, was held by Joy Ann Spadafore. Spadafore subsequently forwarded $175,420 via ACH to account 2072007 at Health Advantage Credit Union (Account B) on or about April 29, 2020. The account at Health Advantage Credit Union (Account B) was also held by Spadafore. Vanguard later returned $190,000 to Alaska FCU on or about May 13, 2020, after the fraudulent transfer was reported. As a result of the fraudulent activity, Vanguard was unable to recover a significant portion of their transfer back to Alaska FCU. The documentation provided by Alaska FCU also verified the funds were returned by Vanguard.

6. Based on documents and information provided by investigators at Vanguard, as well as documentation obtained through legal process from Health Advantage Credit Union, portions of the funds received from the Vanguard account (Account A) were later transferred to JP Morgan Chase Bank. On or about April 30, 2020, a cashier's check in the amount of $75,800 was issued from Health Advantage Credit Union account 2072007 (Account B), made to the order of Dutse Investment Group. This check was deposited into the JPMC Bank Account on or about April 30, 2020. This $75,800 is traceable proceeds of the BEC fraud.

3

7. Affiant obtained information from JP Morgan Chase fraud investigations which indicated the status of the transferred funds. According to the information received, the JPMC Bank Account was partially depleted via small transactions, and the retained balance was approximately $60,000. This remaining balance was on long-term hold pending legal action or eventual release to the state as required by law, after approximately three years.

8. I have reviewed the provided bank records reflecting transfer of the Victim's funds initially from the Alaska FCU account through the Vanguard account (Account A) and Health Advantage Credit Union account (Account B) to the JPMC Bank Account. I have also reviewed documents from the Victim's financial institution reporting the account takeover and the resulting fraudulent transfer. This transfer was directed to the Vanguard account (Account A), which was in fact controlled by a money mule (Spadafore) on behalf of the perpetrators of the fraud. Documents reviewed also indicate the majority of the Victim's funds were subsequently transferred to the Health Advantage Credit Union account (Account B). I have also reviewed bank records showing $75,800 of the funds being sent to the JPMC Bank Account from the Health Advantage Credit Union account (Account B). Finally, I have reviewed records showing Vanguard returned funds to Alaska FCU, the Victim's financial institution, after discovery of the fraud without Vanguard being able to recover those funds.

9. Based upon information provided by employees of the Victim's financial institution, review of ACH and check transfer records involving the fraud proceeds, and documents provided by Vanguard, I believe probable cause exists to believe:

a) The perpetrators of the fraud compromised the initial Victim's account which caused the Victim to effect the $190,000 ACH transfer to the Vanguard account (Account A) controlled by the perpetrators of the fraud through a money mule;

b) $175,420 of the Victim's funds were then sent via ACH to the Health Advantage Credit Union account (Account B), also controlled by the perpetrators of the fraud through the same money mule;

c) Vanguard returned $190,000 to the Victim's Alaska FCU account;

d) $75,800 of the Victim's funds were further sent from the Health Advantage Credit Union account (Account B) via cashier's check to the JPMC Bank Account, also controlled by the perpetrators of the fraud; and

e) Up to $75,800 of funds held in the JPMC Bank Account is traceable proceeds of wire fraud and is property involved in money laundering.

///

## IV. CONCLUSION

10. Based upon the above, I believe there is probable cause to believe that the JPMC Bank Account (a) contains property, real or personal, which constitutes or is derived from proceeds traceable to a specific unlawful activity, including 18 U.S.C. § 1343 (Wire Fraud), and is property, real or personal, involved in a transaction or attempted transaction in violation 18 U.S.C. § 1956 and/or 1957 (Money Laundering); (b) is subject to seizure pursuant to 18 U.S.C. §§ 981(b) and 982(b)(1), and 21 U.S.C. § 853(e) and (f); and (c) is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 982(a)(1), and 28 U.S.C. § 2461.

*Bradley E. Thurman*
Bradley E. Thurman
Special Agent
Federal Bureau of Investigation
Phoenix, Arizona

Subscribed and sworn to before me this **24** day of November, 2021.

*Michelle Burns*
Hon. Michelle H. Burns
United States Magistrate Judge